IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT ) <br> OF INGRAM BARGE COMPANY, ) <br> OWNER OF THE M/V AUBREY B. ) <br> HARWELL AND BARGE IN068509, ) <br> FOR EXONERATION FROM OR ) <br> LIMITATION OF, LIABILITY, ) | No. 4:12-cv-04086-SLD-JEH |

### ORDER

Ingram Barge Company ("Ingram") initiated a limitation action under this Court's admiralty jurisdiction for claims arising from injury to one of its employees, Brandon Hall. Hall answered and counterclaimed for unseaworthiness and Jones Act negligence, and demanded that these claims be tried by a jury. Ingram impleaded the United States. Ingram moved to strike the jury demand, and, separately, to dismiss Hall's claims. The United States joined Ingram in both motions. Ingram and the United States argue that there is no right to a jury trial in a limitation action, and that Hall's claims for non-monetary losses do not state a claim upon which relief can be granted. The United States additionally argues that its statutory waiver of sovereign immunity requires a bench trial. For the following reasons, the motions to strike jury demand are DENIED in part and GRANTED in part, and the motion to dismiss is DENIED. Ingram's additional motion for leave to file a reply brief is DENIED.

### BACKGROUND AND PROCEDURAL HISTORY[1]

On June 4, 2012, Hall, an Ingram employee, was injured while working on one of Ingram's barges, the M/V Aubrey B. Harwell. Hall was wrapping a mooring line to connect the

---

[1] In a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and viewed in the light most favorable to the plaintiff. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934 (7th Cir. 2012) (citation omitted). Accordingly, the facts of Hall's injury are taken from Hall's counterclaim against Ingram, ECF No. 8.

1

barge to a metal pin on Lock and Dam 13, which is operated by the United States Army Corps of Engineers ("the Corps"). The line snapped, striking Hall in the head and causing him multiple severe injuries.

On September 10, 2012, Ingram filed an action, ECF No. 1, asserting admiralty jurisdiction pursuant to 28 U.S.C. § 1333 and seeking to exonerate itself from liability for the accident or, alternatively, limit its liability to the value of the M/V Aubrey B. Harwell, Barge IN068509, and pending freight, pursuant to 46 U.S.C. §§ 30505 and 30506. On September 10, 2012, this Court issued an order, ECF No. 4, requiring all parties with claims arising from the incidents of June 4, 2012 to file those claims with the Court, and stayed all other actions in other courts until the outcome of the limitation action was determined. On October 19, 2012, Hall filed an answer, ECF No. 8, and counterclaims against Ingram alleging negligence under the Jones Act, 46 U.S.C. § 30104, and unseaworthiness under the general maritime law. Hall demanded a jury to hear both counts. On January 4, 2013, Ingram impleaded the United States, ECF No. 14, pursuant to Federal Rule of Civil Procedure 14(c)(2) and the Suits in Admiralty Act, 46 U.S.C. §§ 30901–30918. On January 13, 2014, Ingram moved, ECF No. 24, to strike Hall's jury demand, and on the same day moved, ECF No. 26, to dismiss Hall's counterclaim for failure to state a claim upon which relief can be granted. On January 27, 2014, the United States joined Ingram's motions, ECF Nos. 28, 29, adding their own supplementary motion to strike Hall's jury demand. Hall responded on February 2, 2014, ECF Nos. 30, 31, to the motions to strike and to dismiss. On February 12, 2014, Ingram moved for leave to file a reply, ECF No. 36, and attached the reply as an exhibit. Hall twice amended his complaint, ECF Nos. 38, 40, adding the United States as a co-defendant, and the United States filed an answer, ECF No. 42.

# DISCUSSION

## I. The Jury Demand

Ingram argues that because no right to a jury trial exists in admiralty claims, and because cases in admiralty are generally tried without a jury, Hall's demand for a jury should be struck. Ingram's Mot. to Strike at 2. Ingram also argues that the demand should be struck because limitation actions are best suited to bench trials. *Id*. at 2–3. The United States argues additionally that because the Suits in Admiralty Act, 46 U.S.C. § 30903(b), which waives sovereign immunity for certain civil actions in admiralty, requires a bench trial, Hall's jury demand should be struck. United States's Mot. to Dismiss at 1.

### A. Legal Framework

When a party properly demands a jury trial, the matter must be tried to a jury unless the court, on motion or on its own, finds that there is no federal right to a jury trial on some or all of the issues. Fed. R. Civ. P. 39(a)(2). A court may strike from a pleading insufficient defenses or any immaterial, impertinent or scandalous matter. *Id* 12(f).

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." However, the Seventh Amendment does not apply to admiralty actions, and a party has no right to a jury trial in an action instituted in admiralty. *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 20 (1963). Equally, however, a party in an admiralty proceeding has no right to a non-jury trial. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 369 (1959); *Fitzgerald* at 20; *Complaint of Great Lakes Dredge & Dock Co.*, 895 F.Supp 604, 614 (1995).

There is a strong tradition of trying suits in admiralty without a jury, particularly in the case of limitations proceedings, in which a court enjoins suits in other fora against a vessel

owner while the court determines whether the owner's liability should be limited to the value of the vessel. *See Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 755–56 (2d Cir. 1988) (explaining the technicalities of the limitation proceeding and why it is rarely tried to a jury). However, this preference must be weighed against the Seventh Amendment rights of plaintiffs to pursue their claims before a jury, which would be effectively abrogated by requiring respondents to a limitation action to have their claims tried without a jury. Indeed, the law expressly recognizes and preserves the jury rights of plaintiffs in maritime suits, both via the "saving to suitors" clause of 28 U.S.C. § 1333, which permits plaintiffs to bring *in personam* maritime cases in an ordinary civil action, and via the Jones Act, which expressly provides "the right of the plaintiff to a jury." 46 U.S.C. § 30104. [2]

In cases where plaintiffs are forced by a limitation action to bring their suits in admiralty, courts have acted, where possible, to preserve the jury rights of the plaintiff. *See Fitzgerald*, 374 U.S. at 21 (holding that a Jones act claim and a general maritime law claim for maintenance and cure "must be submitted to the jury when both arise out of the same set of facts"); *Complaint of Poling Transp. Corp.*, 776 F. Supp. 779, 786 (S.D.N.Y. 1991) (deciding in a case where limitation forced personal injury claimants out of state court that "[t]he proper approach here is to empanel a jury at the outset and allow trial to proceed on issues pertaining both to limitation and the common law claims"); *Great Lakes*, 895 F.Supp at 614–15 (empaneling a jury and simultaneously trying personal injury claims to the jury and a limitation action to the court).

"It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Crawford v. Elec. Boat Corp.*, 515 F. Supp.2d 282, 286 (D.

---

[2] While the Jones act provides a plaintiff with a right to a civil action at law before a jury, courts have interpreted the Act to allow a plaintiff unconstrained by a limitation action to bring his claim at law, with a jury, or in admiralty, without one. *Duhon v. Koch*, 628 F.Supp 925, 929 (W.D. La 1986). *See* Fed. R. Civ. P. 9(h).

4

Conn. 2007) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Section 303903 of Title 46 waives the sovereign immunity of the United States in cases where "if a private person or property were involved, a civil action in admiralty could be maintained," but provides that such claims shall be tried without a jury. 46 U.S.C. § 30903.

### B. Ingram's Motion to Strike

Ingram argues that because "[a] limitation action is 'a quintessential admiralty proceeding," Ingram's Mem. in Supp. of Mot. to Strike at 2 (citing *Great Lakes,* 895 F.Supp at 614), both the limitation action and Hall's personal injury claims against Ingram should be tried without a jury.

But it does not follow that because Hall has no right to a jury trial in an admiralty proceeding, or that because limitation actions may be best tried without juries, Hall's claims should not be tried to a jury. *See Great Lakes* at 614–15. The Jones Act, under which Hall makes his negligence claim, provides that Hall "may elect to bring a civil action at law, with the right of trial by jury, against the employer." 46 U.S.C. § 30104. Since Hall could have brought his claim under federal question jurisdiction but for Ingram's limitation action, the Court will not now refuse him a jury on the claim. *See Great Lakes* at 612 (deciding that "merely because [plaintiffs] brought limitation actions within the admiralty jurisdiction of the court does not mean they may use the procedure to strip the claimants of a jury trial to which the claimants would otherwise be entitled"). The Limitation Act, in allowing vessel owners to limit their liability, was intended to be a shield, rather than a sword to deprive plaintiffs of the jury rights they would ordinarily enjoy. *See In re Complaint of Cameron Boat Rentals, Inc.*, 683 F.Supp 577, 582 n.6 (W.D. La. 1988). Furthermore, since Hall would have been entitled to have his Jones Act claim heard by a jury, he would also have been entitled to have his unseaworthiness claim heard by a

jury, had he brought both in a civil action under federal question jurisdiction. *See Fitzgerald,* 374 U.S. at 21. He is thus entitled to a jury on that issue here, as well. *See Great Lakes* at 612.

However, as Hall recognizes, he has no right to a jury trial on the limitation action itself, Hall's Resp. to Mot. to Strike at 3. Courts have differed on whether to permit a limitation action to be tried to a jury when individual claims in response to the limitation action will be tried to a jury. *Compare, e.g.*, *Red Star Towing & Transp. Co. v. "Ming Giant"*, 552 F. Supp. 367, 371 (S.D.N.Y. 1982) (giving the limitation issue to the jury), *with Poling*, 776 F.Supp. at 781 (giving the limitation issue to the court and the personal injury claims to the jury), *and Great Lakes* at 614 (same), *and In re Leigh*, No. 13-cv-294, 2014 WL 1315394 (E.D.N.Y. March 31, 2014) (same). The weight of authority appears to be on the side of deciding the limitation action without a jury, as is ordinarily done, and, absent any compelling reason to try the limitation matter to the jury, the Court agrees with the courts in *Poling*, *Great Lakes*, and *Leigh* that the limitation can and should be tried to the Court, and the Jones Act and unseaworthiness claims to the jury. The limitation action and Hall's claims will be tried in the same proceeding, in the interest of judicial economy and because the questions and evidence presented are likely to be substantially the same.

### C. The United States's Motion to Strike

The United States, which joins Ingram's motion to strike, additionally argues that Hall's jury demand should be struck as to the United States because, insofar as it waives its sovereign immunity, it does so only for the purposes of a bench trial.

The United States is correct. The Suits in Admiralty Act, 46 U.S.C. § 30903, which waives sovereign immunity in cases where "if a private person or property were involved, a civil action in admiralty could be maintained," stipulates that "[a] claim against the United States or a

federally-owned corporation under this section shall be tried without a jury." The Suits in Admiralty Act "simply withdraw[s] sovereign immunity; [it] do[es] not create anything." *Blanco v. United States*, 775 F.2d 53, 63 n.8 (2d Cir. 1985). Merely because Hall's claims against Ingram are permitted to proceed with a jury does not mean that the United States's limited waiver of sovereign immunity for suits in admiralty permits it to be sued by means outside the scope of that waiver. *See Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986) (holding that consent necessary to waive sovereign immunity must be express and strictly construed), *superseded by statute on other grounds as recognized by Landgraf v. USI Film Products*, 511 U.S. 244 (1994).

Accordingly, all of Ingram's claims against the United States in the Second Amended Third-Party Complaint, ECF No. 14, and Hall's claims against the United States in his Second Amended Answer, Third Party Complaint, and Counterclaim, ECF No. 40, must be tried to the Court and not to a jury.

**II.     The Motion to Dismiss**

Ingram argues that Hall cannot, as a matter of law, recover punitive damages or loss of consortium damages, or "other non-pecuniary damages" on either his Jones Act claim or his unseaworthiness claim, and that therefore, his claims must be dismissed pursuant to Rule 12(b)(6) for failing to state a claim upon which relief can be granted. Ingram's Mot. to Dismiss at 1.

**A.  Legal Framework**

In reviewing a motion to dismiss, a court must accept as true all well-pleaded facts in the complaint, and draw all reasonable inferences in favor of the plaintiff. *Scanlan v. Eisenberg*, 669 F.3d 838, 841 (7th Cir. 2012).

There are two primary sources of federal maritime law:

[C]ommon law developed by federal courts exercising the maritime authority conferred on them by the Admiralty Clause of the Constitution ("general maritime law") and statutory law enacted by Congress exercising its authority under the Admiralty Clause and the Commerce Clause ("statutory maritime law").

*McBride v. Estis Well Service, L.L.C.*, 731 F.3d 505, 507–08 (2013), *rehearing granted en banc*. Two basic causes of action existed for sailors against shipowners under general maritime law: an action for unseaworthiness, where injuries caused to the sailor by the vessel's unseaworthiness were compensable, and an action for maintenance and cure, where the vessel owner's failure to pay certain expenses to an injured sailor was compensable. *See The Osceola*, 189 U.S. 158, 169, 171 (1903), *superseded by statute*. However, no cause of action for negligence or accidental death originally existed under general maritime law. *Id*. at 175, *The Harrisburg*, 119 U.S. 199, 204–14 (1886), *overruled by Moragne v. States Marine Lines, Inc.*, 398 U.S. 375 (1970). In order to remedy this deficiency, Congress passed the Jones Act in 1920, creating a statutory cause of action for the negligent injury or death of a sailor. *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 415 (2009). Subsequently, the Supreme Court recognized causes of action in general maritime law for personal injury and wrongful death resulting from unseaworthiness and from negligence, basing its reasoning that such claims must exist on Congress's decision to create a statutory cause of action in the Jones Act. *See Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818–20 (2001).

The Jones Act and other statutory maritime law provisions such as the Death on the High Seas Act ("DOHSA") limit recovery to pecuniary damages, and thus bar punitive damages and compensation for loss of consortium. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). Because the general maritime law cause of action for wrongful death based on unseaworthiness was modeled on the statutory provisions of the Jones Act and DOHSA, the Supreme Court

reasoned in *Miles v. Apex Marine* that, like the Jones Act and DOHSA, that general maritime law causes of action for wrongful death for unseaworthiness could not entail recovery for loss of consortium. *See id* at 32–33 (explaining that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action [for wrongful death] in which liability is without fault than Congress has allowed in cases of death resulting from negligence"). For nineteen years, district courts and courts of appeal frequently regarded what came to be known as the "*Miles* uniformity principle" as limiting the availability of damages at general maritime law to the equivalent damages made available in similar causes of action by statutory maritime law. *See McBride*, 731 F.3d at 511.

However, the Supreme Court decided *Atlantic Sounding Co. Inc. v. Townsend* in 2009, which declared that, in fact, while *Miles* had been "sound," it applied *only* to the wrongful death cause of action for unseaworthiness in general maritime law that the Court had recognized as a consequence of the passage of the Jones Act. *See Townsend*, 557 U.S. at 419 (clarifying that "Congress had chosen to limit, however, the damages available for wrongful-death actions under the Jones Act and DOHSA, such that damages were not statutorily available for loss of society or lost future earnings. The Court thus concluded that Congress' judgment must control the availability of remedies for wrongful-death actions brought under general maritime law") (citation omitted). According to *Townsend*, the reasoning of *Miles* was sound because the general maritime law was created by the Court as a response to the Jones act could not reasonably have permitted remedies not countenanced by the Act. *Id*. However, contrary to what many courts had supposed, general maritime law causes of action that had pre-existed or were separate from the Jones Act and DOHSA (*Townsend* involved maintenance and cure) and their remedies were left intact by *Miles*, and the general maritime law had historically

9

countenanced punitive damages. *Townsend* at 417–18. Thus, the Court found, punitive damages were available for maintenance and cure. *Id*. at 424.

Appellate courts have gone on to apply *Townsend*'s logic to other areas of general maritime law than punitive damages for maintenance and cure. To determine whether a particular remedy is available in a cause of action under general maritime law, courts now ask whether that remedy for that cause of action has an historical or independent basis in general maritime law, and whether, if it does, Congress has spoken in a way the modifies that remedy. *See, e.g. McBride*, 731 F.3d at 515 (finding that unseaworthiness claimants, like maintenance and cure claimants, were permitted to seek punitive damages because there was a separate basis in general maritime law for punitive damages for unseaworthiness); *Doyle v. Graske*, 579 F.3d 898, 905–7 (8th Cir. 2009) (finding no basis, prior to 1974, in general maritime law for loss of consortium claims in general).

It is important to recognize that, while *Townsend* based its reasoning in a chronological notion that maintenance and cure had been available for centuries, and had their own common law rules regarding damages, subsequent appellate court decisions have explicitly recognized that, in determining whether a particular remedy not available in statutory maritime law is nevertheless available under general maritime law, the proper inquiry is not the age of the cause of action or the remedy, but whether, under the current state of maritime law, a particular remedy for a cause of action exists. *See McBride* at 516 (explaining that "[o]ur task is not to reconstruct maritime law as it existed in 1920"); *Graske* at 906 (examining for guidance the "short history of loss-of-consortium damages in admiralty").

**B. Ingram's Motion to Dismiss**

Ingram argues that because Hall seeks punitive damages and loss of consortium damages with respect to his two minor children, but such damages are not available on either his Jones Act claim or his unseaworthiness claim, his complaint fails to state a claim upon which relief can be granted, and must be dismissed. Ingram's Mem. in Supp. Mot. Dismiss at 2.

As an initial matter, it is correct, as Hall admits, Hall's Resp. Mot. Dismiss at 2, that loss of consortium damages and punitive damages are not available for his Jones Act claim. *See Miles*, 498 U.S. at 32. The Jones Act, like DOHSA, limits itself to "pecuniary loss," and thus excludes recovery for punitive damage and loss of consortium. *Id*. However, inability to recover for non-pecuniary damages under the Jones Act does not defeat Hall's claims. On the contrary, seamen have traditionally had the "right to choose among overlapping statutory and common-law remedies." *Townsend*, 557 U.S. at 423. *See Hlodan v. Ohio Barge Line, Inc.*, 611 F.2d 71, 75 (1980) (explaining that "a Jones Act claim may be joined with a wrongful death claim for nonpecuniary damages based on general maritime law, where the incident does not arise on the high seas, and that nonpecuniary damages may be recovered under the unseaworthiness claim"). Thus, the limitedness of the Jones Act claim's remedies does not decide the question of whether Hall's claim as a whole survives the motion to dismiss.

Ingram argues that *Townsend* ought to be narrowly interpreted as only permitting punitive damages for maintenance and cure actions, but leaving in place the rule of *Miles* insofar as *Miles* bars "punitive and other non-pecuniary damage recovery for general maritime negligence and unseaworthiness claims." Ingram's Mem. in Supp. Mot. Dismiss at 4. Thus, Ingram urges, Hall's unseaworthiness action cannot be granted the punitive damages and loss of consortium damages Hall requests. *Id*. However, Ingram's interpretation of *Townsend* fails to appreciate the Supreme Court's logic in *Townsend*. In *Townsend*, the Court first determined that

11

punitive damages were available under general maritime law, and particularly for maintenance and cure actions. *Townsend* at 414. Then, the Court explained that the only source of statutory maritime law that might disrupt the state of the general maritime law was the Jones Act, but determined, in agreement with *Miles*, that the Jones Act's only effect had been to create a limited wrongful death cause of action in general maritime law. *Id*. at 419. In other words, Ingram construes too broadly the scope of *Miles's* holding, as explained by *Townsend*, and then goes on to argue on the basis of that scope. The appropriate inquiry for a court to pursue under *Townsend*, to determine whether a particular remedy exists for a cause of action under general maritime law, is to examine the state of general maritime law, and then to determine whether any legislative enactment has altered that general maritime law.

*Townsend* found that punitive damages had long been available in maintenance and cure actions, and also explained that "[h]istorically, punitive damages have been available and awarded in general maritime actions." *Townsend* at 407. Many circuit courts of appeal affirmed over the course of the twentieth century that this was the case, and specifically that it was the case for unseaworthiness actions. *See Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 623 (5th Cir. 1981) (stating that "punitive damages may be recovered under general maritime law upon a showing of willful and wanton misconduct by the shipowner in the creation or maintenance of unseaworthy conditions"); *Evich v. Morris*, 819 F.2d 256, 258 (9th Cir. 1987) (stating that "[p]unitive damages are available under general maritime law for claims of unseaworthiness"); *Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1550 (11th Cir. 1987) (stating that "[p]unitive damages should be available in cases where the shipowner willfully violated the duty to maintain a safe and seaworthy ship . . . ."). Even the Fifth Circuit, in *Miles v. Melrose*, 882 F.2d 976, 989 (5th Cir. 1989), which then went to the Supreme Court as *Miles v. Apex Marine*,

12

while denying that loss of consortium damages were available under a general maritime law wrongful death claim, held that punitive damages are "recoverable under the general maritime law upon a showing of willful and wanton misconduct by the shipowner in failing to provide a seaworthy vessel." *Id*. (internal quotation marks omitted). No statutory bar to the recovery of punitive damages has been created, and Ingram does not maintain that it has. Thus, the general maritime law provides a right to seek punitive damages in an unseaworthiness action, and Hall may do so here.

Loss of consortium as a remedy under the general maritime law in an unseaworthiness action is less clear, but precedent supports its existence as well. In *Doyle v. Graske*, 579 F.3d 898 (8th Cir. 2009), the court, following a *Townsend* analysis, found that there was no well-established right in general maritime law to loss-of-consortium damages "as a general matter." *Id*. at 906. However, the court so found because it found the precedent of awards for loss of consortium damages was limited to certain situations, and did not extend to the fact situation before the court in *Doyle* (nonfatal injuries suffered by a nonseafarer injured beyond U.S. territorial waters). *Id*. In so finding, the court recognized and distinguished the ruling of the Supreme Court in *American Express Lines, Inc. v. Alvez*, 446 U.S. 274 (1980).

In *Alvez*, while recognizing that there was not a long history of awarding loss-of-consortium damages under general maritime law, the Court concluded that the development of the common law and general maritime law meant that "general maritime law authorizes the wife of a harbor worker injured nonfatally aboard a vessel in state territorial waters to maintain an action for damages for the loss of her husband's society." *Id*. at 274. Without passing an opinion on whether a general right of recovery in maritime law for loss of consortium exists, the Court understands *Alvez* to mean that the nonfatal injury of a sailor in state territorial waters, as

alleged by Hall, can give rise to a loss of consortium claim. As explained above, the (relatively) recent provenance of the Supreme Court's holding in *Alvez* is no bar to a finding that such a remedy exists in general maritime law, under *Townsend*'s analysis. And no law cited by Ingram has modified the application of the right to seek damages for loss of consortium.

Hall states a claim upon which relief can be granted because he can recover for loss of consortium and punitive damages on a theory of unseaworthiness under the general maritime law.

## CONCLUSION

Both Ingram's Motion to Strike Jury Demand, ECF No. 24, and the United States's Response joining that motion, ECF No. 29, are GRANTED IN PART and DENIED IN PART. Ingram's Motion to Dismiss, ECF No. 26, and the United States' Response joining that motion, ECF No. 28, are DENIED. Ingram's Motion for Leave to File a Reply Brief, ECF No. 36, is DENIED.

Entered this 29th day of September, 2014.

                                                    s/ Sara Darrow
                                                    SARA DARROW
                                    UNITED STATES DISTRICT JUDGE